UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

ANNIE LEE OLIVER, et al.,

Plaintiffs,

vs.

TOMMY GREENWELL, et al.,

Defendants.

Case No. 1:19 CV 137 ACL

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Leave to Conduct Second Deposition of Defendant ACH, and or Motion for Sanctions. (Doc. 82.) The motion is fully briefed and ready for disposition.

On September 9, 2022, the undersigned entered an Order (Doc. 79) denying Defendant ACH's Motion to Quash and/or Protective Order (Doc. 70) related to Plaintiffs' Rule 30(b)(b) Deposition Notice. Defendant ACH's attempt to relitigate the issues addressed in that Order will not be discussed herein. This Order will examine the merits of Plaintiffs' request for a second deposition and monetary sanctions.

**Plaintiffs' Motion for a Second Deposition and/or Sanctions**

On September 13, 2022, Defendant ACH produced Dr. Jillian M. Bresnahan, Vice President of Medical Operations at Advanced Correctional Healthcare (ACH), as its Rule 30(b)(6) representative for deposition. The deposition lasted more than five hours. According to Plaintiffs, Dr. Bresnahan was unprepared and unknowledgeable about the information that was initially designated more than three months prior to the deposition and other topics.

Plaintiffs further reported that Dr. Bresnahan was not prepared to testify on behalf of the organization; rather, her testimony was limited to her own experience. The topic areas about which Dr. Bresnahan was unprepared to testify include the the structure and organization of ACH; the job descriptions of nurses employed by ACH; ACH's policies, procedures, and training requirements; deaths of inmates under ACH's care; inmate claims of deliberate indifference against ACH, and investigations conducted by ACH regarding such; ACH's contract with Pemiscot County Jail; and patient scheduling. Plaintiffs claim that this information is needed to show that ACH's policies, customs, or actions (including failure to train or supervise) resulted in the alleged constitutional violations.

Plaintiffs ask the Court to find that ACH violated this Court's Order in which ACH was instructed to provide the requested information. Plaintiffs further request that they be granted leave to conduct a second deposition of ACH's corporate designee and that sanctions be imposed against ACH under Rule 37. In particular, Plaintiffs ask the Court to direct ACH to pay for Plaintiffs' fees and costs associated with the September 13 deposition ($2,268.25) and any subsequent deposition of the corporate designee that is authorized.

In response, Defendant ACH claims that Plaintiffs' questions regarding policies and procedures should have been directed to the Pemiscot County Defendants and that Plaintiffs are making a backdoor attempt by trying to gather the information from ACH's corporate designee. Defendant ACH stated that Plaintiffs' questions related to deaths of inmates was addressed through the Declaration of Jessica Young and that Dr. Bresnahan answered all questions

regarding deliberate indifference claims that had been made against ACH. Young's Declaration listed various reasons why the information requested was not being provided while at the same time acknowledging that ACH maintains the current year's submitted material and statistical information dating back to 2016. ACH claims that Dr. Bresnahan answered the questions posed to her regarding multiple topic areas, including the structure and organization of ACH, the job descriptions of nurses employed by ACH, as well as training and an illness report manual. ACH counters that it should not be penalized for failing to answer questions that Plaintiffs did not ask Dr. Bresnahan. ACH further argues that "none of the questions posed will elicit information regarding whether or not these Defendants were deliberately indifferent in this case." (Doc. 84 at p. 12.)

Unlike other deponents, persons deposed as corporate designees under Rule 30(b)(6) must testify on matters "not only within his or her personal knowledge, but also on matters reasonably known by the responding entity." *CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, 322 F.R.D. 350, 360-61 (N.D. Iowa 2017) (quoting *All. for Glob. Justice v. District of Columbia*, 437 F. Supp. 2d 32, 37 (D.D.C. 2006)); *see also* Fed. R. Civ. P. 30(b)(6) (stating a designee "must testify about information known or reasonably available to the organization"). Accordingly, "[i]f the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation." *Whitt v. City of St. Louis*, No. 4:18-CV-1294 RLW, 2020 WL 7122615, at *3 (E.D. Mo. Dec. 4, 2020) (quoting *List v. Carwell*, 2020 WL 5988514, at *13 (D. Minn. Oct. 9, 2020)). "This obligation requires the designee to testify about information known or reasonably available to the organization" and it "can include information held by third-party sources if that

information is reasonably available to the organization." *Id*. (quoted case omitted).

Proper preparedness for a Rule 30(b)(6) deposition requires the good faith of both parties. "[T]he requesting party must reasonably particularize the subjects about which it wishes to inquire." *Id*. (quoting *Dwelly v. Yamaha Motor Corp.*, 214 F.R.D. 537, 540 (D. Minn. 2003)); *see also* Fed. R. Civ. P. 30(b)(6) (requiring that the notice describe the matters for examination with "reasonable particularity"). A deposing party may not demand that a corporate designee be prepared to speak with encyclopedic authority. *CMI*, 322 F.R.D. at 361. In return, "the responding party must make a conscientious, good-faith effort to designate knowledgeable persons … and to prepare them to fully and unevasively answer questions about the designated subject matter." *Id.* (quoting *Dwelly*, 214 F.R.D. at 540).

A court may levy "appropriate sanction[s] for a corporation's inadequate designation" in response to a Rule 30(b)(6) notice. *See Cedar Hill Hardware & Const. Supply, Inc. v. Ins. Corp. of Hannover*, 563 F.3d 329, 345 (8th Cir. 2009); *CitiMortgage, Inc. v. Chicago Bancorp, Inc.*, No. 4:12-CV-00246 CDP, 2013 WL 3946116, at *3-4 (E.D. Mo. July 31, 2013). Alternatively, an ineffective Rule 30(b)(6) deposition may be remedied by a second deposition of the corporation. Pursuant to Rule 30(a)(2), a party must obtain the Court's leave to conduct a deposition if the deponent has already been deposed in the case. Where "the deponent, another person, or any other circumstance" has impeded fair examination, the court must allow additional time consistent with Rule 26(b). Fed. R. Civ. P. 30(d)(1).

The Court finds that Defendant ACH's preparation of the corporate designee was inadequate. To the degree that semantics played a role in Dr. Bresnahan's failure to answer the topic areas that were previously authorized by this Court, guidance will be provided. Defendant ACH is reminded that producing documents and responding to written discovery "is not a

substitute for providing a thoroughly educated Rule 30(b)(6) deponent." *Buehrle v. City of O'Fallon, Mo.*, No. 4:10CV00509 AGF, 2011 WL 529922, at *3 (E.D. Mo. Feb. 8, 2011) (citation omitted). A review of various comments made by Dr. Bresnahan and defense counsel during the deposition support that Defendant ACH did not make a good faith effort to adequately prepare the corporate designee to address questions related to topic areas that were specifically authorized by this Court prior to the deposition. As such, a monetary sanction is warranted although not the full amount requested by Plaintiff. Dr. Bresnahan was under an obligation to research and review the materials provided in advance of her deposition and to answer the authorized topic areas clearly and directly. She had a duty to testify about information reasonably known by the organization rather than limiting her responses to her own personal experience. To remedy her failure to do so, the Court will order ACH to produce Dr. Bresnahan or a substitute corporate designee who is able to answer questions related to the topic areas specified herein.

A review of the parties' briefing regarding the pending Motion, including some of the belated proportionality arguments articulated by Defendant ACH, and the transcript of Dr. Bresnahan's deposition testimony, has enabled the Court to provide additional guidance regarding the subject matter to be addressed in the second deposition. In some cases, the scope of the information ACH must provide is different than indicated in the Court's previous Order. Any such changes or clarifications regarding the Court's previous ruling will be noted in bold. Specifically, the topics the corporate designee must be prepared to discuss include:

**A. Other Inmate Deaths/Allegations of Deliberate Indifference**

Insofar as Defendant ACH has acknowledged that information regarding inmate deaths and claims of deliberate indifference to medical needs that have occurred at ACH facilities is

available to them, the corporate designee must be prepared to testify about those claims for the timeframe between **January 1, 2013, and December 31, 2017**, as well as information concerning the specific incidents within the Pemiscot County Jail that are listed in paragraph 52 of the Second Amended Complaint.

Next, the corporate designee must provide information concerning "all incidents (whether suit was filed or not), **between January 1, 2013, and December 31, 2017**, where an individual under the care and treatment of Advanced Correctional Healthcare, Inc. died while in custody." (Doc. 71-1 at 6, Topic 7) (alterations noted in bold). The topic excludes any protected identifying health information of an inmate, as well as deaths resulting from State-imposed execution, motor vehicle accidents, and attacks by another inmate wherein the deceased was pronounced dead prior to any employee or agent of ACH being notified.

Finally, the corporate designee must be prepared to discuss "all other incidents (whether suit was filed or not), **between January 1, 2013, and December 31, 2017,** where an allegation of deliberate indifference to medical needs has been made against Advanced Correctional Healthcare, Inc." (Doc. 71-1 at 6, Topic 8) (alterations noted in bold). It excludes protected identifying health information of an inmate but includes specific allegations regarding the circumstances in which deliberate indifference was alleged in an unprotected pleading against ACH in a lawsuit.

**B. Policies, Procedures, and Training**

While relationships between ACH and its clients may vary, each of their clients' facilities follow policies and procedures related to how and what medical care is provided to inmates whether those policies and procedures were created by the facility, ACH, or as the result of a collaborative effort between ACH and the facility. Additionally, ACH offers and provides

training on various subjects. ACH's corporate designee must be prepared to provide information regarding "all changes, updates and/or amendments to **[ ]** policies, procedures, protocol, training and/or rules regarding inmate medical treatment, evaluation, and/or care, as well as inmate access to, denial of, and/or receipt of said treatment, evaluation and/or care, **as followed by ACH employees and Pemiscot County Jail staff** after August 16, 2015 to present, and includes such changes which were made in whole or in part due to an incident involving an inmate's medical needs and/or death." (Doc. 71-1 at 8, Topic 20) (alterations noted in bold).

Additionally, it will be necessary for the corporate designee to be prepared to share information concerning "the investigation into **[ ]** policies, procedures, protocol, training and/or rules regarding inmate medical treatment, evaluation, and/or care, as well as inmate access to, denial of and/or receipt of said treatment, evaluation and/or care, which were in place at the time of the deaths of Michael Robinson and Leroy Hamm, Sr., **that were followed by ACH employees and Pemiscot County Jail staff, as well as any** policy, procedure, training, and protocol changes implemented **after those two deaths regardless of the reason for the change."** (Doc. 71-1 at 8, Topic 21) (alterations noted in bold, original limitations for Topic 21 remain in place, *see id*.).

Another area that will require preparation by the corporate designee includes "information regarding ACH's investigation or **review** of the efficacy of its policies, procedures, protocol training and/or rules regarding inmate medical treatment, evaluation, and/or care related to **Leroy Hamm's death** on July 7, 2015, and the results of the investigation or review." (Doc. 71-1 at 8-9, Topic 22) (alterations noted in bold).

Fourth, the corporate designee must be prepared to provide "information **known by ACH** regarding how inmates are billed for medical care, evaluation, and/or treatment

**received while detained/confined at their Missouri client's facilities**; explanation of how fees are determined and who is responsible for the fees; who prepares the billing of inmates for medical services and what, if any, circumstances would result in an inmate being denied medical treatment." (Doc. 71-1 at 11, Topic 23) (alterations noted in bold).

The fifth area for preparation by the corporate designee includes **information known by ACH** "regarding scheduling inmate medical treatment, care, and/or evaluation **at their Missouri client's facilities**, including **[ ]** the time between ACH's receipt of a request for health services and ACH's action on such requests (including scheduling and the actual provision of care), as well as the methods by which such information and requests are disseminated to ACH's healthcare providers." (Doc. 71-1 at 9-10, Topic 26) (alterations noted in bold).

The last two areas for which the corporate designee must be prepared to discuss include information related to the "general process for inmates to request or otherwise schedule medical care of any kind **in ACH's Missouri clients' facilities,** from **July 1,** 2015 to present" (Doc. 71-1 at 10, Topic 27) (alterations noted in bold) and **information regarding how ACH and their Missouri clients communicate about inmate requests for medical care, including the scheduling procedures for such requests, standard length of time between a request and provision of medical care (or, standard length of time for specific types of requests for medical care), and any policies or protocol related to prioritizing inmate requests for medical care for inmates in ACH's Missouri clients' facilities** (Doc. 71-1 at 10, Topic 28) (alterations noted in bold).

**C. Other**

The corporate designee must also be prepared to testify regarding the organization and structure of ACH as previously described in Topic Area 1. *See* Doc. 71-1 at 4.

Upon consideration of the foregoing,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to Conduct Second Deposition of Defendant ACH, and or Motion for Sanctions (Doc. 82) is **GRANTED**. **No later than December 21, 2022**, ACH must produce a corporate designee for a second deposition to address the topic areas described herein. ACH is further assessed a sanction in the amount of One Thousand One Hundred Thirty-Five dollars ($1,135) to be paid not later than 30 days from the date of this Order.

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 9th day of November, 2022.