UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| ANNIE LEE OLIVER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 1:19 CV 137 ACL |
| vs. | ) |
| | ) |
| TOMMY GREENWELL, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Second Motion to Compel and/or Motion for Sanctions. (Doc. 93.) The motion is fully briefed and ready for disposition.

As an introductory matter, the undersigned notes that **this case is still in the discovery phase.** Discovery rules are "broadly and liberally construed in order to serve the purpose of discovery," which is to "provide the parties with information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement." *Roberts v. Prime Transp. Inc.*, No. 1:09-CV-46 LMB, 2009 WL 2913917, at *1 (E.D. Mo. Sept. 4, 2009) (internal quotations omitted); *see also Mabey v. United States*, 999 F.2d 1252, 1254 (8th Cir. 1993) (Discovery is "meant to insure...parties can obtain '[m]utual knowledge of all the relevant facts gathered by both parties.'") (quoting *Greyhound Lines, Inc. v. Miller*, 402 F.2d 134, 143 (8th Cir. 1968)).

**A.     Background**

The basis for Plaintiffs' Second Motion to Compel is that Defendant Advanced Correctional Healthcare's ("ACH's") corporate deponent failed to comply with the Court's instructions.  On September 9, 2022, this Court denied ACH's request for a Protective Order

1

to prevent the deposition of its corporate designee and instructed ACH to participate.  The first deposition of ACH's corporate deponent, Dr. Jillian Bresnahan, took place on September 13, 2022; and the doctor was not sufficiently prepared to participate in the deposition.  Based on the clear failure of the corporate deponent to answer questions regarding topic areas defined by the Court, leave to take a second deposition was granted.  In addition, a sanction was ordered--half of the cost of the first deposition--due to the corporate deponent's non-compliance with the Court's instructions.  Due to the lack of preparation and/or cooperation, or a combination of the two, in the first deposition, the Court set forth more particular instructions about the topic areas for which the corporate deponent needed to prepare for the second deposition.

     A status conference was held with counsel of record before the second deposition on November 7, 2022.  The Court commented that based on her prior performance, Dr. Bresnahan may not be best suited to address the remaining questions in the second deposition of the corporate designee.  Defense counsel agreed.  (Doc. 87, FTR Gold Recording at 4:26 p.m.)  Discussion was then held regarding scheduling and deadlines.  Dr. Bresnahan was ultimately the corporate deponent who appeared at the second deposition on December 13, 2022.

     As set out in the Court's Order, corporations must "prepare [their corporate designees] in order that they can answer fully, completely, and unevasively, the questions posed . . . as to the relevant subject matters." *Wilson v. Lakner,* 228 F.R.D. 524, 528 (D. Md. 2005) (quoting *Mitsui & Co. v. Puerto Rico Water Res. Auth.*, 93 F.R.D. 62, 67 (D.P.R. 1981)).  While absolute perfection in preparation is not required, courts require corporations to make a "good faith effort" to collect and review all relevant information, and to "*interview*

2

*employees with personal knowledge* just as a corporate party is expected to do in answering interrogatories." *Wilson*, 228 F.R.D. at 528-29 (Emphasis supplied). An unprepared designee is tantamount to a failure to appear for a deposition. *Crawford v. Franklin Credit Mgmt. Corp.*, 261 F.R.D. 34, 38-39 (S.D. N.Y. 2009).

   B.   **Plaintiffs' Second Motion to Compel/ for Sanctions**

Despite the clear directives articulated by the Court, the corporate deponent failed to effectively participate in the second deposition, which was held on December 13, 2022. In brief, the Court instructed Defendant ACH to be prepared to answer questions regarding several areas, including "Other Inmate Deaths/Allegations of Deliberate Indifference," as well as "Policies, Procedures, and Training." The Court will discuss these topics in turn.

   **1. Other Inmate Deaths/Allegations of Deliberate Indifference**

The Court articulated instructions about the litigation matters the corporate deponent needed to be prepared to answer. The subject matter was specifically described, as follows:

1. Insofar as Defendant ACH has acknowledged that information regarding inmate deaths and claims of deliberate indifference to medical needs that have occurred at ACH facilities is available to them, the corporate designee must be prepared to testify about those claims for the timeframe between **January 1, 2013, and December 31, 2017**, as well as information concerning the specific incidents within the Pemiscot County Jail that are listed in paragraph 52 of the Second Amended Complaint.[1]

---

[1] Upon review of the pending Motion, it is apparent that Defendant ACH did not enter into a contract with Pemiscot County Jail (PCJ) until September 29, 2015, which was after the deaths of Hamm and Robinson at the PCJ. (Doc. 95-1 at 21.) That said, whether ACH provided any advice to PCJ regarding the deaths of Robinson and Hamm is unclear from the present record before the Court. Dr. Bresnahan's testimony revealed that ACH does not keep records regarding what, if any, advice ACH may have provided to PCJ regarding the deaths of Robinson and Hamm. In any event, Dr. Bresnahan, as

3

2. Information concerning "all incidents (whether suit was filed or not), **between January 1, 2013, and December 31, 2017**, where an individual under the care and treatment of Advanced Correctional Healthcare, Inc. died while in custody." (Doc. 71-1 at 6, Topic 7) (alterations noted in bold).  The topic excludes any protected identifying health information of an inmate, as well as deaths resulting from State-imposed execution, motor vehicle accidents, and attacks by another inmate wherein the deceased was pronounced dead prior to any employee or agent of ACH being notified.

3. "[A]ll other incidents (whether suit was filed or not), **between January 1, 2013, and December 31, 2017,** where an allegation of deliberate indifference to medical needs has been made against Advanced Correctional Healthcare, Inc." (Doc. 71-1 at 6, Topic 8) (alterations noted in bold).  It excludes protected identifying health information of an inmate but includes specific allegations regarding the circumstances in which deliberate indifference was alleged in an unprotected pleading against ACH in a lawsuit.

(Doc. 89 at 5-6.)

Together, Dr. Bresnahan and her attorney dangled information regarding ACH's deliberate indifference and death-related litigation and non-litigation history at the fingertips of Plaintiffs' counsel, however, refused disclosure of the document referenced by Dr. Bresnahan during the deposition based on attorney work-product privilege.  In the Motion to Compel or for Sanctions, Plaintiffs seek to compel production of all the documents Dr. Bresnahan utilized during the deposition to answer questions. ACH opposes the production of the documents, as protected by the attorney work-product privilege.

Federal Rule of Civil Procedure 26(b)(3) provides, in pertinent part, that:

---

the corporate deponent, had an obligation to address queries concerning "information regarding ACH's investigation or **review** of the efficacy of its policies, procedures, protocol training and/or rules regarding inmate medical treatment, evaluation, and/or care related to the deaths of Robinson and Hamm.

4

> [o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by [a party's attorney unless] ... they are otherwise discoverable under Rule 26(b)(1) and [the party seeking the discovery] shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3).  ACH indicates that some of the information referenced by Dr. Bresnahan—the list of litigation matters related to "death" claims—was provided after the deposition.  ACH claims that the documents related to non-litigation "incidents" are protected by this work-product privilege as opinion work product.

At least two appellate courts have held that opinion work-product subject to Rule 26(b)(3) protection may be reflected in something as subtle as the act of selecting or ordering documents because this may reflect an attorney's opinion as to the significance of those documents in the preparation of the case.  *Sporck v. Peil,* 759 F.2d 312, 316 (3d Cir. 1985), *cert. denied,* 474 U.S. 903, (1985); *Shelton v. American Motors Corp.* 805 F.2d 1323, 1329 (8th Cir. 1986).  Opinion work product enjoys a nearly absolute immunity from discovery. *Cox v. Administrator U.S. Steel & Carnegie,* 17 F.3d 138, 1422 (11th Cir. 1994).

*Sporck,* decided by a divided panel of the Third Circuit, determined that "the selection and compilation of documents by counsel ... in preparation for pretrial discovery falls within the highly-protected category of opinion work product."  *Sporck,* 759 F.2d at 316.  *Shelton,* decided by the Eighth Circuit, made a similar finding, but the facts of that case involved a deposition of an attorney, not a general or corporate witness.  The attorney deponent in *Shelton* refused to acknowledge the existence or non-existence of particular documents during the course of his deposition.  The *Shelton* Court held that the attorney, by acknowledging the existence of documents referred to by plaintiffs' counsel, would "reflect

5

her judgment as an attorney in identifying, examining and selecting from [the case's] voluminous files those documents on which she [would] rely in preparing her client's defense." *Shelton,* 805 F.2d at 1327–28.  Under such circumstances, the attorney's ability to recollect the existence of any individual document would be limited to those that she necessarily "selected as significant and important with respect to her legal theories." *Id.*

Cases that have considered issues similar to those presented in *Sporck, Shelton*, and the case herein, have demonstrated a good deal of disagreement as to the application of such a "selection-based opinion work-product" privilege, and the result has been the production of a multitude of distinguishing principles.  The foremost and most consistent of such principles is that "the mere selection and grouping of information by counsel for a deponent to review does not automatically transform otherwise discoverable documents into work product." *See, e.g., In re San Juan Dupont Plaza Hotel Fire Litigation,* 859 F.2d 1007, 1018 (1st Cir. 1988).  The Court in the *San Juan* case criticized the *Sporck* decision as flawed because it assumed that the revelatory nature of the sought-after information was, in and of itself, sufficient to impart the information with the cloak of heightened protection of opinion work product.

It is conceivable that some circumstances might warrant application of the *Sporck* principle, but under the facts presented, *in camera* review of the litigation and non-litigation documents utilized by Dr. Bresnahan during the deposition will enable the Court to determine whether they are protected by the work product privilege.  "Construed too broadly, the work product privilege can interfere with the essential function of the discovery process

6

of narrowing issues for trial." *In re Seroquel Prod. Liab. Litig.,* No. 6:06-md-1769-Orl-22DAB, 2008 WL 215707, at *5 (M.D. Fla. Jan. 24, 2008).

If the Court determines that some, or all, of the litigation and non-litigation lists referenced by Dr. Bresnahan during the deposition are discoverable, then the Court will determine the manner of disclosure.

### 2. Policies, Procedures, and Training

In providing direction for the second deposition of the corporate designee, the Court noted that:

> While relationships between ACH and its clients may vary, each of their clients' facilities follow policies and procedures related to how and what medical care is provided to inmates whether those policies and procedures were created by the facility, ACH, or as the result of a collaborative effort between ACH and the facility.  Additionally, ACH offers and provides training on various subjects.

(Doc. 89 at 6-7.)  The Court then specified several topic areas that the corporate designee must be prepared to answer, including:

a. Information regarding "all changes, updates and/or amendments to **[ ]** policies, procedures, protocol, training and/or rules regarding inmate medical treatment, evaluation, and/or care, as well as inmate access to, denial of, and/or receipt of said treatment, evaluation and/or care, <u>**as followed by ACH employees and Pemiscot County Jail staff** after August 16, 2015 to present</u>, *and includes such changes which were made in whole or in part due to an incident involving an inmate's medical needs and/or death*."  (Doc. 71-1 at 8, Topic 20) (alterations noted in bold).

b. Information **known by ACH** regarding how inmates are billed for medical care, evaluation, and/or treatment **received while detained/confined at their Missouri client's facilities**; explanation of how fees are determined and who is responsible for the fees; who prepares the billing of inmates for medical services and what, if any, circumstances would result in an inmate being denied medical treatment."  (Doc. 71-1 at 11, Topic 23) (alterations noted in bold).

7

    c. **information known by ACH** "regarding scheduling inmate medical treatment, care, and/or evaluation **at their Missouri client's facilities**, including **[ ]** the time between ACH's receipt of a request for health services and ACH's action on such requests (including scheduling and the actual provision of care), as well as the methods by which such information and requests are disseminated to ACH's healthcare providers."  (Doc. 71-1 at 9-10, Topic 26) (alterations noted in bold).

    d. Information related to the "general process for inmates to request or otherwise schedule medical care of any kind **in ACH's Missouri clients' facilities,** from **July 1,** 2015 to present" (Doc. 71-1 at 10, Topic 27) (alterations noted in bold)

    e. **Information regarding how ACH and their Missouri clients communicate about inmate requests for medical care, including the scheduling procedures for such requests, standard length of time between a request and provision of medical care (or, standard length of time for specific types of requests for medical care), and any policies or protocol related to prioritizing inmate requests for medical care for inmates in ACH's Missouri clients' facilities** (Doc. 71-1 at 10, Topic 28) (alterations noted in bold).

ACH persistently evaded answering questions regarding these topic areas.  As previously noted, Rule 30(b)(6) "explicitly requires [a corporation] to have persons testify on its behalf as to all matters known or reasonably available to it and, therefore, implicitly requires such persons to review all matters known or reasonably available to it in preparation for the Rule 30(b)(6) deposition." *United States v. Taylor,* 166 F.R.D. 356, 361-62 (M.D. N.C. 1996).  Such an interpretation is necessary,

> in order to make the deposition a meaningful one and to prevent the 'sandbagging' of an opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial.  This would totally defeat the purpose of the discovery process.  The Court understands that preparing for a Rule 30(b)(6) deposition can be burdensome.  However, this is merely the result of the concomitant obligation from the privilege of being able to use the corporate form in order to conduct business.

*Id.* at 362.

8

Dr. Bresnahan frequently stated that information relevant to Plaintiffs' deposition questions were maintained by PCJ, ACH's insurer, or ACH's outside counsel.  It is notable that the contract (Doc. 85-2) between ACH and PCJ provided that:

> 1.5  CQI MEETINGS.  ACH will review, at the scheduled Continuous Quality Improvement (CQI) meetings with the SHERIFF or designee, *the healthcare reports concerning the overall operation of the healthcare services program and the general health of the inmates of the FACILITY*.  *Id.* at 2 (Emphasis supplied).
>
> \*\*\*
>
> 1.10  MANAGEMENT SERVICES.  ACH will provide management services to include: a comprehensive Strategic Plan; Peer Review; CQI; Cost Containment; Utilization Management; and a Risk Management program specific to the FACILITY's medical operations.  *Id.* at 3.

The contract further provided as follows, in relevant part:

> 1.12  **The SHERIFF will provide ACH with reasonable ongoing access to all medical records, <u>even after</u> the expiration of this AGREEMENT, <u>for the purposes of defending litigation</u>**.  *Id.* at 3 (Emphasis supplied).
>
> 1.21  SHERIFF'S POLICIES AND PROCEDURES.  ACH staff will operate within the requirements of the SHERIFF's policies and procedures as communicated to ACH staff by the SHERIFF or designee.  *Such policies and procedures may change from time to time; if so, the SHERIFF or designee will promptly notify ACH staff, provide them with a written copy of the policy and/or procedure changes, and provide any necessary training to the ACH staff.*  Upon the SHERIFF's request, ACH will assist the SHERIFF in drafting **medical** policies and procedures.  *Id.* at 4 (Bolded emphasis in original; italicized emphasis supplied).
>
> 2.4  INMATE INFORMATION.  **The SHERIFF will provide, as needed, information pertaining to inmates that ACH and the SHERIFF mutually identify as reasonable and necessary for ACH to adequately perform its obligations to the SHERIFF and the COUNTY**.  Additionally, during this AGREEMENT period, and for a reasonable time thereafter, the SHERIFF will provide ACH, at ACH's request, the SHERIFF's records relating to the provision of healthcare services to inmates as may be reasonably requested by ACH in connection with an investigation of, or defense of, any claim by a third party related to ACH's conduct… *Id.* at 6 (Emphasis supplied).

9

Defendant ACH's continued willful refusal to comply with the Court's Order regarding the obligations of its corporate deponent requires this Court to further examine what information is considered "reasonably available" to an organization if it is in the possession of a related entity.  Although the answer depends on the facts of each case, the general rule is that the organization must produce a representative to testify about such information if the other entity is within its "control."  As explained by one federal court:

> [C]ourts have rejected an approach which limits the 'reasonably available' requirement to only information possessed by entities over which the corporate deponent has direct legal control. Instead, courts have frequently used the 'control' standard of [Federal] Rule 34(a) as a guideline to determine whether information of corporate affiliates is 'reasonably available' to the deponent. The majority view appears to be that information is within a deponent's 'control' and thus 'reasonably available' for purposes of [Federal] Rule 30(b)(6) when the deponent 'either can secure [information] from the related entity to meet its business needs or acted with it in the transaction that gave rise to the suit.'

*Int'l Bhd. of Teamsters, Airline Div. v. Frontier Airlines, Inc.*, No. 11-cv-02007-MSK-KLM, 2013WL627149, at *5 (D. Colo. Feb. 19, 2013) (quoting *Sanofi-Aventis v. Sandoz, Inc.*, 272 F.R.D. 391, 394 (D.N.J. 2011)).

Dr. Bresnahan was unequivocal about whether she made efforts to secure any of the documents related to CQI, changes to the PCJ policies and procedures, or other relevant materials.  When asked, "What attempts did you make to communicate with Pemiscot County Jail prior to this deposition to obtain policies for providing medical care, data for claims of deliberate indifference, and policies and procedures for review?"  (Doc. 95-1 at p. 30.)  Dr. Bresnahan answered, "None."  *Id*.  This demonstrates a blatant disregard for the corporate designee's obligation to prepare for her deposition.

The Court finds that the information requested by Plaintiffs was sufficiently within ACH's control.  The provisions of the contract between ACH and PCJ reveal that ACH had

10

access to the documents at issue. For example, the contract indicates that the Sheriff will provide ACH with written copies of any policy or procedure changes and that ACH will assist the Sheriff upon his request in drafting medical policies and procedures. (Doc. 85-2 at 4.) As such, any claim that ACH did not have access to the medical policies and procedures at PCJ was disingenuous. Furthermore, ACH's two employees, Nurse Tate and Dr. Pewitt, were required to follow the PCJ policies and procedures. Dr. Bresnahan's claimed ignorance of such policies and procedures is further evidence of ACH's efforts to obstruct the discovery process.

The record before the Court demonstrates that ACH's corporate deponent and counsel did not cooperate with the discovery process. Their combined efforts to deceive and avoid complying with the Court's directives was palpable. Dissecting the collective transgressions of the corporate deponent and defense counsel was a painstaking process that required this Court to engage in a tedious comparison of Dr. Bresnahan's deposition testimony to the Court's clear directives of the subject matter for which Dr. Bresnahan was required to answer. While the obstructive efforts were open and obvious, the Court is unable to articulate what discoverable material is reasonably available from each of the three identified sources who maintain information relevant to ACH's role as a provider of services to PCJ, that being the jail itself, outside counsel, and ACH's insurance carrier.

The Court's conclusion that ACH failed to provide information that was "reasonably available" based on ACH's relationship to the other entities creates questions regarding what information is available to be produced, and which entity possesses the information. It is also possible that some of this material may be duplicative of information that has already been provided by Defendant Pemiscot County. A status hearing to discuss issues related to

11

production will be set promptly.

In conclusion, Defendant ACH is warned that future non-compliance with this Court's Orders may result in more severe sanctions, including but not limited to the prohibition of supporting its defenses and a Court finding that certain facts have been provisionally established.

Upon consideration of the foregoing,

**IT IS HEREBY ORDERED** that Plaintiffs' Second Motion to Compel and/or Motion for Sanctions (Doc. 93) is **granted, in part, regarding sanctions.  A ruling on the request for a third deposition is stayed until after the status conference on February 23, 2023.**

**IT IS FURTHER ORDERED** that Defendant ACH must submit the litigation and non-litigation lists referenced by Dr. Bresnahan during the December 13, 2022, for *in camera* review **not later than Wednesday, February 8, 2023, at noon**.

**IT IS FURTHER ORDERED** that Defendant ACH's Motion for Summary Judgment (Doc. 102) is **stricken from the record** in consideration of the further discovery that must be completed.

**IT IS FURTHER ORDERED** that a hearing to identify the outstanding discovery materials ACH is obligated to produce by requesting such materials from the various affiliated entities is scheduled for **Thursday, February 23, 2023, at 10:00 a.m**.  Counsel for Plaintiffs and ACH must **submit a summary** of the information (not more than three pages) that they intend to offer during the hearing **not later than Friday, February 17, 2023**. Counsel for the Pemiscot County Defendants may but is not required to offer a summary. *The summary must also include a proposed schedule for providing the material.*

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Sanctions (Doc. 93), specifically Plaintiffs' costs associated with the second deposition in the amount of $1,501.00 (Doc. 108-2) is **granted**. This sanction is to be paid not later than thirty days from the date of this Order.

                                                /s/ *Abbie Crites-Leoni*
                                             ABBIE CRITES-LEONI
                                             UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of February, 2023.