UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| ANNIE LEE OLIVER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 1:19 CV 137 ACL |
| vs. | ) |
| | ) |
| TOMMY GREENWELL, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Second Motion to Compel (Doc. 93), the Court already having ruled on the request for sanctions.  A hearing was held with the parties of record along with Defendant ACH's outside counsel to address discovery issues that remain.

**A. Background**

The basis for Plaintiffs' Second Motion to Compel is that Defendant Advanced Correctional Healthcare's ("ACH's") corporate deponent did not comply with the Court's instructions.  Defendant ACH's corporate deponent, Dr. Jillian Bresnahan, participated in depositions on September 13 and November 7, 2022.  The doctor was not sufficiently prepared to address the topic areas that had been identified by Plaintiff and narrowed by the Court.

Multiple objectives were met during the hearing, including: **1)** the identification and production of outstanding discovery materials that are reasonably available to ACH under Fed.R.Civ.Pro. 30(b)(6), as described in the undersigned's prior Order, *see* Doc. 110 at p. 10-

1

12; **2)** Defendant ACH agreed to redact any work-product from the non-litigation and litigation lists (previously submitted by ACH for *in camera* review) prior to disclosure of the lists to Plaintiff pursuant to an oral consent Motion for Protective Order that will be formally submitted in conjunction with the redacted list; **3)** Plaintiff withdrew the request for the Court to order a third deposition with Defendant ACH's corporate deponent; and **4)** the parties agreed upon new deadlines for dispositive and *Daubert* motions, as well as a trial schedule.

   B. "Reasonably Available" Information

The contract between Defendant ACH and Defendant Pemiscot County provides that Pemiscot County would provide ACH with "reasonable ongoing access" to various types of records and documents "even after the expiration of [their agreement], for the purpose of defending litigation."

Regarding the preparation of corporate deponents, this Court's prior Order discussed the general rule that an organization must produce a representative to testify about information "reasonably available" to the organization if the information is in the possession of a related entity within its "control." This Court previously referred to a decision from the District of Colorado wherein the trial judge[1] stated:

> [C]ourts have rejected an approach which limits the 'reasonably available' requirement to only information possessed by entities over which the corporate deponent has direct legal control. Instead, courts have frequently used the 'control' standard of [Federal] Rule 34(a) as a guideline to determine whether information of corporate affiliates[2] is 'reasonably available' to the deponent. The majority view

---

[1] The Honorable Kristen L. Mix, United States Magistrate Judge.
[2] Defendant ACH argued that this decision was limited only to corporate affiliates. The undersigned disagreed and commented that the contractual terms agreed upon between Defendant ACH and Defendant Pemiscot County support a finding that the information Plaintiff

appears to be that information is within a deponent's 'control' and thus 'reasonably available' for purposes of [Federal] Rule 30(b)(6) when the deponent 'either can secure [information] from the related entity to meet its business needs or acted with it in the transaction that gave rise to the suit.'

*Int'l Bhd. of Teamsters, Airline Div. v. Frontier Airlines, Inc*., No. 11-cv-02007-MSK-KLM, 2013WL627149, at *5 (D. Colo. Feb. 19, 2013) (quoting *Sanofi-Aventis v. Sandoz, Inc*., 272 F.R.D. 391, 394 (D.N.J. 2011)).

Defendant ACH reported that it secured copies of various categories of documents maintained by Pemiscot County, including training videos and spreadsheets of county staff who attended training events; HR policies; two sets of Pemiscot County Jail policies; Continuous Quality Improvement (CQI) letters,[3] and other documents related to CQI; and the Illness Report Manual (also referred to as the "Yellow Book").  Defendant ACH further noted that the "death tracker" information would be provided after the necessary redactions have been made to it, plus Lists #1 and #2.  Although it was not specifically addressed during the hearing, a copy of Defendant ACH's "tenets" regarding medication choices by medical providers must also be provided.  (Doc. 114 at § C.7.)

### C. Proportionality

Defendant ACH once again objected to the Court's instruction to produce information related to "inmate deaths and claims of deliberate indifference to medical needs that have occurred at ACH facilities."  Although the undersigned inquired whether Defendant ACH

---

sought was within Defendant ACH's control and thus reasonably available.  Furthermore, counsel for Defendant Pemiscot County agreed to produce the information maintained by the County pursuant to the contract.

[3] Counsel for Defendants indicated that CQI reports for only the last couple of years were available due to a server issue at the Pemiscot County Jail combined with Defendant ACH's practice of maintaining such records for no more than one year.

believed the previously reduced timeframe of January 1, 2013, through December 31, 2017 should be further restricted, Defendant ACH did not ask the Court to do so. Instead, Defendant ACH asked that the categories of deliberate indifference claims be limited to blood pressure monitoring, "chronic care monitoring" claims, and death claims. Originally, Plaintiff requested that Defendant ACH produce such information from August 2007 to the present. Defendant ACH's request to restrict the categories of deliberate indifference claims contained in the Non-Litigated Claims List (identified as List #1) and Litigation List (identified as List #2) is overruled.

Regarding changes in policies and procedures, Defendant ACH objected to the Court's order that it produce that information **"after August 16, 2015 to present,"** based on a claim that it is irrelevant to the pending claims. The contract between Defendant ACH and Defendant Pemiscot County was not effective until September 29, 2015, thus the policies and procedures that were instituted or followed by Defendant ACH **after September 29, 2015 to present** must be produced. As such, with Defendant ACH's objection is granted from between August 16 and September 28, 2015.

This Court[4] in *Whitt v. City of St. Louis*, No. 4:18-CV-1294-RLW, 2020 WL 7122615, at *7-9 (E.D. Mo. Dec. 4, 2020), provided a detailed discussion that could be applied to the relevance of the non-litigation and litigation lists, as well as the policies and procedures followed by the instant Defendant organizations after they entered into the September 29, 2015, agreement. Judge White relied on *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985), for the proposition that post-incident actions may be relevant to liability under

---

[4] The Honorable Ronnie L. White, United States District Judge.

4

*Monell v. Department of Social Services*, 436 U.S. 658, 685 (1978). *See id.* at *9 n. 3. Judge White observed that the majority of cases:

> support the conclusion that subsequent incidents may be probative of what policies, practices, or accepted customs existed at the time of [Defendant's alleged deliberate indifference to Plaintiff's medical needs], which would be relevant to his *Monell* claims. From this post-incident evidence the jury may imply the existence of a pre-incident policy and the evidence may also infer knowledge and moving force.

*Id*. at *9.

Based on the foregoing, Defendant ACH's objection to the Court's order to produce redacted copies of Lists #1 and #2, as well as the policy and procedure information, that is reasonably available after September 29, 2015, is overruled. That said, the overruling of Defendant ACH's objections as to whether this information is relevant to the discovery process does not extend to whether such information is admissible at trial.

**D. Other Issues**

In response to the foregoing, Plaintiff withdrew the request for the opportunity to conduct a third deposition of ACH's corporate deponent.

Discussion regarding the amendment of the Case Management Order resulted in an agreement on the remaining deadlines and trial schedule which will be memorialized by separate Order.

Upon consideration of the foregoing,

**IT IS HEREBY ORDERED** that Plaintiffs' oral withdrawal of the request for a third deposition of ACH's corporate deponent as described in Plaintiffs' Second Motion to Compel (Doc. 93) moots the only issue remaining in the Motion.

**IT IS FURTHER ORDERED** that Defendant ACH must submit redacted copies of

Lists #1 and #2 for *in camera* review along with a Motion for Protective Order and proposed order **not later than Tuesday, March 28, 2023.**

**IT IS FURTHER ORDERED** that immediately following the entry of the Protective Order, Defendant ACH must produce redacted copies of Lists #1 and #2, along with a redacted copy of the "death tracker" information to Plaintiffs' counsel.

**IT IS FURTHER ORDERED** that ACH's objections to the Court's order to produce redacted copies of Lists #1 and #2, the redacted "death tracker" information, policy and procedure information secured from Pemiscot County, and ACH's "tenets" regarding medication choices are **overruled**, as described above.

**IT IS FURTHER ORDERED** that Plaintiff must make an **informal report** to the Court regarding whether the discovery process has been completed **not later than April 13, 2023**.

    /s/ *Abbie Crites-Leoni*
    ABBIE CRITES-LEONI
    UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of March, 2023.